**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**IN RE: ASBESTOS PRODUCTS LIABILITY
LITIGATION (NO. VI)**

**Consolidated Under
MDL Docket No. 875**

| | | |
|---|---|---|
| CALVIN DAMON and | : | CIVIL ACTION NO. |
| ROSEANNE DAMON, h/w | : | 2:14-cv-01954-ER |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| HONEYWELL INTERNATIONAL, INC., | : | ASBESTOS CASE |
| f/k/a ALLIED SIGNAL, INC., | : | |
| Successor to BENDIX CORP., *et al.* , | : | |
| Defendants | : | |

**DEFENDANT, HONEYWELL INTERNATIONAL, INC.'S
SUR REPLY TO PLAINTIFFS' RESPONSE TO
DEFENDANT, HONEYWELL INTERNATIONAL, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, Honeywell International, Inc. ("Honeywell"), as Successor in Interest to

Allied Signal, Inc., as Successor to Bendix Corporation, hereby submits its Sur Reply to

Plaintiffs' Response to its Motion for Summary Judgment.

Plaintiffs' Response is a failed attempt to survive summary judgment by misrepresenting

and mischaracterizing the evidence of record.  A thorough analysis of the numerous exhibits

cited by Plaintiffs, including Plaintiff's testimony, experts' reports, and various Navy documents

reveals that none of these materials establish that any Bendix radar equipment aboard the USS

Lake Champlain contained asbestos or that Plaintiff was exposed to asbestos attributable to

Bendix.

8573037-1

- Contrary to Plaintiffs' contention, Plaintiff did not testify to exposure from Bendix asbestos dust.  At most, he testified that he may have been exposed to dust when cleaning out the Bendix radar equipment, but (1) he had no personal knowledge whether the dust contained asbestos and (2) he was not sure about the source of the dust, noting that there were fans inside the equipment that would draw in whatever dust or debris was outside in the ECM room.

- Plaintiffs attached numerous Navy documents to their Response, the vast majority of which pertain to electric power equipment, which does not include radar equipment/systems.  For example, in Plaintiffs' Exhibit "I," a Military Specification for Electric Power Equipment, "electric power equipment" is defined to include "generators, motors, electric brakes, solenoids, thermostatic switches, relays, heaters, and all other items supplying or supplied directly by power systems.  It does not include electronic, fire control, or interior communications equipment."  *See* Plaintiffs' Exhibit "I," at p. 2, sec. 3.1. Accordingly, Plaintiffs' many documents related to electric power equipment generically and any references therein to asbestos materials are wholly irrelevant to radar equipment specifically, let alone Bendix radar equipment.

- In addition, while some of Plaintiffs' cited Navy documents contain references to the Bendix radar equipment, none of these documents reference or in any way demonstrate that there was asbestos in the Bendix radar equipment itself or make any connection between the Bendix radar equipment and any asbestos products or materials.  Assuming Plaintiffs are correct that Plaintiff actually worked with

Bendix radar equipment in the first place, Plaintiffs are simply unable to point to any documents, or any other evidence for that matter, to establish that the Bendix radar equipment that Plaintiff worked with aboard the USS Lake Champlain contained asbestos.

- Honeywell's expert, Mr. McCaffery, did not concede that Bendix equipment similar to that on which Plaintiff worked contained asbestos.  To the contrary, he concluded just the opposite:

    > **[T]here is no evidence that either the gasket materials or phenolic plastics contained asbestos . . . All of the gasket materials identified are manufactured from neoprene rubber or paper (vellumoid).  Previous research has found that these gasket materials did not contain asbestos . . . [T]he molded phenolic cases for toggle and push button switches detailed in the extracts from "Instruction Book for Radar Set AN/SPN-8 (XN-1)" (Reference C), Table of Replaceable Parts, are all asbestos-free phenolics.**  *See* Exhibit "C" to Honeywell's Motion, at p. 8.

- Although some, but not all, molding compounds used in Navy electrical systems contained asbestos pre-1953 (according to Mr. McCaffery, in the 1940s), changes in the 1950s and early 1960s (Plaintiff served on the USS Lake Champlain from 1964-1966) phased out the use of asbestos from those parts generally.  More importantly, however, as to the Bendix equipment specifically, Mr. McCaffery concluded that the molded compounds at issue were "all asbestos-free phenolics."  See Exhibit "C" to Honeywell's Motion, at p. 8.

- In his report, Plaintiffs' expert, Mr. Faherty, does not identify Bendix as a brand in particular nor does he identify the type of Bendix radar involved herein (i.e., AN/SPN-8 (XN-1).  Rather, he discusses radar and antennas in general and the

only specific type of radar he mentions is an AN/SPS-6 NAVSHIPS 91081, which is different from the Bendix radar equipment.

- Plaintiffs do not dispute several critical points raised in Honeywell's Motion:

    **a)** that Plaintiff, by his own words, did not know the source of the dust he cleaned from the Bendix radar equipment – what it came from and whether it even came from inside or outside the equipment;

    **b)** that Plaintiff, by his own words, did not know whether the dust came from the Bendix radar equipment itself;

    **c)** that Plaintiff, by his own words, did not know whether the dust from the process of cleaning the Bendix radar equipment contained asbestos; and

    **d)** that Plaintiff, by his own words, did not know whether the Bendix radar equipment contained asbestos.

In addition, Honeywell maintains that Plaintiffs' analysis with respect to the *Howard* decision is incorrect on several critical points:

- Plaintiffs' argument that the *Howard* opinion is dicta is nothing but legal folly as Plaintiffs seek to adopt the position of a single concurring justice despite the fact that this is a unanimous decision by the Court on the merits.  As the majority correctly states, its decision provides an explanation for the disposition of the pending matter and sets forth well-established principles relevant to that outcome.  As such, it is binding legal precedent.

- *Howard* does not simply reaffirm several governing principles from prior cases, but rather, it sends an unmistakable message to the trial and appellate courts of this

Commonwealth.  Many courts have not been following these principles as espoused in *Gregg* and *Betz* by limiting or marginalizing their application.  It is now clear and free from doubt that if plaintiffs cannot satisfy the burdens set by these principles, then their claims must be dismissed at the summary judgment stage.

- Plaintiffs' suggestion that *Betz* requires summary judgment only where there is **both** *de minimus* exposure **and** an expert opinion based on the "every exposure" theory is a misinterpretation of the law.  *De minimus* exposure **and** an "every exposure" opinion are two separate and independent grounds, each of which alone provides a basis for the granting of summary judgment.

- Contrary to Plaintiffs' position, *Howard* does, indeed, require that plaintiffs' experts offer more than generalized or superficial statements in support of their opinions.  A mere recitation of the work or exposure history or a simple mention of products without any analysis or explanation is wholly inadequate.  The experts must address dose as a factor in their opinions and also must provide some reasoned, individualized assessment of a plaintiff's exposure history.  In addition, while a *Frye* challenge is available, it is a timely and expensive procedure and, more importantly, it is not necessary where the expert's opinion is invalid on its face.

- Plaintiffs' contention that more than *de minimus* exposure is, by itself, sufficient to withstand summary judgment and get to a jury is in error.  Plaintiffs mistakenly equate *de minimus* exposure pursuant to the frequency, regularity, and proximity standard with an analysis on dose.  These are separate and distinct legal and scientific concepts. For example, there can be frequent, regular, and proximate exposure to a

product, but where the product gives off little or no asbestos fibers, then there cannot be a **sufficient** dose from that product to constitute a **substantial** contributing factor in causing the alleged disease.  This fact alone is pertinent to the case at bar since Plaintiffs' experts' reports fail to consider either of these two issues.  That is precisely why the *Howard* court requires that experts **consider dose and offer an individualized assessment** when rendering their causation opinions before the opinions are legally sufficient on causation.  In order to establish substantial factor causation, as required by *Betz* under the Restatement (Second) of Torts §433, the exposure from a particular defendant's product must also be compared with the totality of the plaintiff's exposures.  This principle was expressly recognized by the *Howard* court and excerpted from Plaintiffs' counsel's own brief to the court.

- At the summary judgment stage, this court can make the determination whether the exposure evidence and the expert's opinion are insufficient to prove substantial factor causation.

- It cannot be left for the jury to determine if the exposure from each defendant's product was a substantial contributing factor absent an expert opinion addressing the exposure of each individual defendant.  Once a valid opinion is presented on this issue, then the jury can assess whether to accept or reject that opinion.  Furthermore, this court, in its gatekeeper role, can and should strike down expert opinions based on the "every exposure" theory or some semantic variation thereof.

- It is not Honeywell's position that Plaintiffs must prove that each defendant alone caused the alleged injury; rather**, Plaintiffs must prove that the exposure from each defendant's product was a <u>substantial contributing factor</u> to that injury.**

For all the foregoing reasons, Plaintiffs have failed to meet their burden under the law and summary judgment must be granted in Honeywell's favor.

Respectfully submitted,

**RAWLE & HENDERSON** LLP

BY:     /s/ Peter J. Neeson
         Peter J. Neeson, Esquire
         Benjamin Rose, Esquire
         Attorney Identification Nos.  27601/42203
         The Widener Building
         One South Penn Square
         Philadelphia, PA 19107
         215-575-4200
         *Attorneys for Defendant,*
         *Honeywell International, Inc.*

Dated: <u>August 27, 2015</u>

<u>**CERTIFICATE OF SERVICE**</u>

PETER J. NEESON, ESQUIRE, certifies that he served a true and correct copy of the attached Sur Reply to Plaintiffs' Response to Motion for Summary Judgment upon all counsel of record electronically via Electronic Court Filing on the date listed below.


**RAWLE & HENDERSON** LLP

BY:    /s/ Peter J. Neeson_____
Peter J. Neeson, Esquire
Benjamin Rose, Esquire
Attorney Identification Nos.  27601/42203
The Widener Building
One South Penn Square
Philadelphia, PA 19107
215-575-4200
*Attorneys for Defendant,*
*Honeywell International, Inc.*

Dated:  August 27, 2015

8573037-1