IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CALVIN DAMON and : CONSOLIDATED UNDER
ROSEANN DAMON, : MDL 875

    Plaintiffs,

v.

AIREON MANUFACTURING CORP.,
ET AL., : E.D. PA CIVIL ACTION NO.
: 2:14-01954-ER

    Defendants.

FILED SEP 0 1 2015
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

# O R D E R

**AND NOW**, this **31st** day of **August, 2015**, it is hereby **ORDERED** that the Motion for Summary Judgment of Defendant CBS Corporation (Doc. No. 254) is **GRANTED in part; DENIED in part.**[1]

---

[1] This case was removed in April of 2014 from the Court of Common Pleas of Philadelphia to the United States District Court for the Eastern District of Pennsylvania, where it became part of MDL-875.

    Plaintiff Calvin Damon ("Mr. Damon") alleges that he developed lung cancer as a result of exposure to asbestos while serving in the Navy. Plaintiffs allege that CBS Corporation, a successor to Westinghouse Electric Corporation ("CBS" or "Westinghouse") is liable for asbestos exposure arising from shipboard equipment manufactured by it (or Westinghouse), which was used aboard ships. The alleged exposure pertinent to Defendant occurred aboard:

- USS Independence (CVA-62) - May 1964-May 1966
- USS Lake Champlain (CVS-39) - June 1966-July 1967

    Plaintiffs brought claims against various defendants. Defendant Westinghouse has moved for summary judgment, arguing that there is insufficient evidence to establish causation with respect to any product for which it could be liable. Defendant asserts that maritime law applies. Plaintiffs contend that their claims are governed by Pennsylvania state law.

## I. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B. The Applicable Law

Defendant asserts that maritime law applies. Plaintiffs contend that their claims are governed by Pennsylvania law. Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

### Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

### Connection Test

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for the application of maritime law. Conner, 799 F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at

3

534). This is particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers. See id. But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. Id.

It is undisputed that Plaintiff's alleged exposure to asbestos from Defendant's product(s) occurred while aboard a ship. Therefore, this exposure was during sea-based work. See Conner, 799 F. Supp. 2d 455. Accordingly, maritime law is applicable to Plaintiffs' claims against Defendant. See id. at 462-63.

C. Bare Metal Defense Under Maritime Law

This Court has held that the so-called "bare metal defense" is recognized by maritime law, such that a manufacturer has no liability for harms caused by – and no duty to warn about hazards associated with – a product it did not manufacture or distribute. Conner v. Alfa Laval, Inc., No. 09-67099, – F. Supp. 2d –, 2012 WL 288364, at *7 (E.D. Pa. Feb. 1, 2012)(Robreno, J.).

D. Product Identification/Causation Under Maritime Law

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001). This Court has also noted that, in light of its holding in Conner v. Alfa Laval, Inc., No. 09-67099, – F. Supp. 2d –, 2012 WL 288364 (E.D. Pa. Feb. 1, 2012)(Robreno, J.), there is also a requirement (implicit in the test set forth in Lindstrom and Stark) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. Abbay v. Armstrong Int'l., Inc., No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. Stark, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced

4

the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. Id. at 376 (quoting Harbour v. Armstrong World Indus., Inc., No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. Lindstrom, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id. Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" Id. (quoting Harbour, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." Stark, 21 F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

## II. Defendant Westinghouse's Motion for Summary Judgment

### A. Defendant's Arguments

Westinghouse argues that Plaintiff's evidence is insufficient to establish causation with respect to any product for which it can be liable. It contends that this is because (1) there is no evidence that Plaintiff breathed in any respirable asbestos fibers from a product manufactured (or supplied) by it, and (2) there is no admissible testimony that any Westinghouse product contained asbestos because (a) Plaintiff's evidence on the matter is inadmissible lay testimony, (b) any information on asbestos content that he obtained from others (including his friends and his counsel) is inadmissible hearsay, and (c) he has not proffered scientific evidence on this matter (such as expert testimony or scientific analysis of the composition of the products at issue).

### B. Plaintiff's Arguments

In support of his assertion that he has identified sufficient evidence of exposure/causation to survive summary judgment, Plaintiff cites to the following evidence:

- <u>Deposition of Plaintiff (Calvin Damon)</u>
  Plaintiff provides testimony that he worked as a radarman aboard the <u>USS Lake Champlain</u> and the <u>USS Independence</u> during the mid 1960s. He explained that he worked in both the "ECM" room and the "radar room."

  He testified that he worked with Westinghouse breaker boxes on average once per month. He explained that his work involved opening the boxes, which were sealed shut (with a sealing material) and were also insulated with insulation that he believed contained asbestos. He testified that when he opened the breaker boxes, dust would come out and that it would make it difficult to breathe. He testified that he knew the boxes were Westinghouse because they had the name Westinghouse on them – and that there were four Westinghouse boxes on one of the ships and possibly more on the other (although he was not certain of the number). When questioned as to whether the dust emanated from the equipment in the box (as opposed to being dust from elsewhere, such as outside the box), he stated that it emanated from the equipment in the box and explained that it could not have come from elsewhere because the breaker boxes were sealed "tight as could be." When asked as to whether he knew what the dust consisted of, he answered that it was asbestos. He testified that there was no warning on the Westinghouse equipment (such as a warning that it contained dust that could cause cancer).

  Plaintiff testified that he was exposed to respirable dust that emanated from Westinghouse radarscopes, and which would go right into his face. He testified that this occurred at least once per month (on average) for each piece of equipment and, for a given radarman, usually once every three to four days. He believed that, during a three-day shift, he would open the Westinghouse equipment at least once. He testified that

> this dust contained asbestos. He testified
> that he did not see any asbestos-related
> warnings with this equipment.
>
> (Pl. Exs. A and B, Doc. No. 268.)

- Military Documents
  Plaintiff cites to two documents, which
  consist of a military ship equipment
  inspection report for the <u>USS Lake Champlain</u>
  and another military document, which indicate
  that radar equipment was used aboard the ship
  and that Westinghouse was one of the
  government contractors and/or manufacturers
  who provided that type of radar equipment.

  (Pl. Ex. C-D, Doc. Nos. 268 and 268-1.)

- Various Documents
  Plaintiff cites to various other pieces of
  evidence, including military specifications,
  expert testimony, marketing materials,
  discovery responses of Defendant,
  correspondence with Defendant, and industry
  articles (dating back to the 1930s, and
  including one authored by a Westinghouse
  executive), which indicate, <u>inter alia</u>, that
  (1) the military required (a) asbestos in
  molded plastic parts for Phenolic equipment,
  (b) that asbestos insulation be used with
  radar equipment (such as the Bendix radar
  equipment), and that (2) Westinghouse was
  aware of the hazards of asbestos as far back
  as the 1930s.

  (Pl. Exs. C through L, Doc. Nos. 268, 268-1,
  268-2, and 268-3.)

**C. Analysis**

Plaintiff alleges that he was exposed to asbestos from Westinghouse breaker boxes, insulation used in connection with those breaker boxes, and Westinghouse radarscopes. The Court examines the evidence pertaining to each alleged source of asbestos exposure separately:

7

### (i) Breaker Boxes

There is evidence that Plaintiff was exposed to respirable dust that emanated from Westinghouse breaker boxes (and that it was not dust from elsewhere that had settled there). There is evidence that this dust contained asbestos. There is evidence that this occurred, on average, once per month during a period of over three years. As such, a reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from a product manufactured and/or supplied by Westinghouse such that it was a substantial factor in the development of his illness. See Lindstrom, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is not warranted with respect to this source of alleged asbestos exposure. Anderson, 477 U.S. at 248-50.

### (ii) Insulation (used with Breaker Boxes)

There is evidence that Plaintiff was exposed to respirable asbestos dust from external insulation used in connection with Westinghouse equipment during his time aboard the ships at issue. However, there is no evidence that this insulation was manufactured or supplied by Westinghouse. As such, no reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from insulation manufactured and/or supplied by Westinghouse such that it was a substantial factor in the development of his illness because any such finding would be based on conjecture. See Lindstrom, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is warranted with respect to this source of alleged asbestos exposure. Anderson, 477 U.S. at 248-50.

### (iii) Radarscopes

There is evidence that Plaintiff was exposed to respirable dust that emanated from Westinghouse radarscopes. There is evidence that this dust contained asbestos. There is evidence that this occurred several times per month (perhaps as many as ten times per month) during a period of over three years. As such, a reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from a product manufactured and/or supplied by Westinghouse such that it was a substantial factor in the development of his illness. See Lindstrom, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is not warranted with respect to this source of alleged asbestos exposure. Anderson, 477 U.S. at 248-50.

E.D. Pa. No. 2:14-01954-ER     **AND IT IS SO ORDERED.**

*[signature]*
———————————————
EDUARDO C. ROBRENO, J.

---

### D. Conclusion

Summary judgment in favor of Defendant on grounds of insufficient evidence of exposure/causation is <u>granted</u> with respect to alleged exposure from <u>insulation</u>, but is <u>denied</u> with respect to alleged exposure from Westinghouse <u>breaker boxes</u> and <u>radarscopes</u>.