```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| CALVIN DAMON and<br>ROSEANN DAMON, | FILED | CONSOLIDATED UNDER<br>MDL 875 |
| Plaintiffs, | SEP 0 1 2015 | |
| v. | MICHAEL E. KUNZ, Clerk<br>By_____Dep. Clerk | |
| AIREON MANUFACTURING CORP.,<br>ET AL., | | E.D. PA CIVIL ACTION NO.<br>2:14-01954-ER |
| Defendants. | | |

## O R D E R

**AND NOW,** this **31st** day of **August, 2015**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant

Raytheon Company (Doc. No. 242) is **GRANTED in part; DENIED in**

**part.**[1]

---

[1] This case was removed in April of 2014 from the Court of Common Pleas of Philadelphia to the United States District Court for the Eastern District of Pennsylvania, where it became part of MDL-875.

Plaintiff Calvin Damon ("Mr. Damon") alleges that he developed lung cancer as a result of exposure to asbestos while serving in the Navy. Plaintiffs allege that Defendant Raytheon Company ("Raytheon") is liable for asbestos exposure arising from radar sets it manufactured (including the gaskets contained therein), which were used aboard ships. The alleged exposure pertinent to Defendant Raytheon occurred during Mr. Damon's work aboard:

- USS Independence (CVA-62) - May 1964-May 1966
- USS Lake Champlain (CVS-39) - June 1966-July 1967

Plaintiffs brought claims against various defendants. Defendant Raytheon has moved for summary judgment, arguing that there is insufficient evidence to establish causation with respect to any product for which it could be liable. Defendant asserts that maritime law applies. Plaintiffs contend that some of their claims are governed by maritime law, while others are governed by Pennsylvania state law.

## I. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B. The Applicable Law

Defendant asserts that maritime law applies. Plaintiffs contend that some of their claims are governed by maritime law, while others are governed by Pennsylvania state law. Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

Connection Test

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for the application of maritime law. Conner,

>799 F. Supp. 2d at 467-69 (citing <u>Grubart</u>, 513 U.S. at 534). This is particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers. <u>See</u> <u>id.</u> But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. <u>Id.</u>

It is undisputed that Plaintiff's alleged exposure to asbestos from Defendant's product(s) occurred while aboard a ship. Therefore, this exposure was during sea-based work. <u>See</u> <u>Conner</u>, 799 F. Supp. 2d 455. Accordingly, maritime law is applicable to Plaintiffs' claims against Defendant. <u>See</u> <u>id.</u> at 462-63.

    C.    <u>Bare Metal Defense Under Maritime Law</u>

This Court has held that the so-called "bare metal defense" is recognized by maritime law, such that a manufacturer has no liability for harms caused by – and no duty to warn about hazards associated with – a product it did not manufacture or distribute. <u>Conner v. Alfa Laval, Inc.</u>, No. 09-67099, – F. Supp. 2d –, 2012 WL 288364, at *7 (E.D. Pa. Feb. 1, 2012)(Robreno, J.).

    D.    <u>Product Identification/Causation Under Maritime Law</u>

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." <u>Lindstrom v. A-C Prod. Liab. Trust</u>, 424 F.3d 488, 492 (6th Cir. 2005); citing <u>Stark v. Armstrong World Indus., Inc.</u>, 21 F. App'x 371, 375 (6th Cir. 2001). This Court has also noted that, in light of its holding in <u>Conner v. Alfa Laval, Inc.</u>, No. 09-67099, – F. Supp. 2d –, 2012 WL 288364 (E.D. Pa. Feb. 1, 2012)(Robreno, J.), there is also a requirement (implicit in the test set forth in <u>Lindstrom</u> and <u>Stark</u>) that a plaintiff show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. <u>Abbay v. Armstrong Int'l., Inc.</u>, No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. <u>Stark</u>, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence

4

(such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. Id. at 376 (quoting Harbour v. Armstrong World Indus., Inc., No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. Lindstrom, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id. Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" Id. (quoting Harbour, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." Stark, 21 F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

## II. Defendant Raytheon's Motion for Summary Judgment

### A. Defendant's Arguments

Raytheon argues that Plaintiff's evidence is insufficient to establish causation with respect to any alleged asbestos exposure and that, under maritime law, it has no duty to warn about and cannot be liable for injury arising from any product or component part that it did not manufacture or supply.

### B. Plaintiff's Arguments

In support of his assertion that he has identified sufficient evidence of exposure/causation to survive summary judgment, Plaintiff cites to the following evidence:

- <u>Deposition of Plaintiff (Calvin Damon)</u>
  Plaintiff provides testimony that he was exposed to respirable dust from Raytheon radar equipment while he was working as a radarman aboard the <u>USS Lake Champlain</u> and the <u>USS Independence</u> during the mid 1960s.

5

He testified that this occurred at least once per month (on average) for each piece of equipment and, for a given radarman, usually once every three to four days.

Plaintiff testified that he associated the name Raytheon with the radarscope (seeing the name on the "housing" of the radarscope and the "removal plate" (which he also described as the "cover")), as well as the "sealing" or gasket material used in the "ECM" or radar room.

When asked to describe the work he performed, Plaintiff explained that he had to dust out the equipment each time he worked on it – and that the dust would make him cough. He also testified that work on the equipment involved removing and replacing gaskets that sealed the equipment closed. When asked where the dust came from, he explained that it came from inside the Raytheon radarscope, which was a "sealed" area. When asked later if he knew whether the dust emanated from the area that said "Raytheon," he answered "yes," that it had emanated from that area.

Plaintiff testified that this dust contained asbestos. When asked earlier if the Raytheon radar equipment contained asbestos, he answered that he was "quite confident" that it did.

(Pl. Exs. A, B, and C, Doc. No. 265.)

- Various Documents
  Plaintiff cites to various other pieces of evidence, including military specifications, expert testimony, and marketing materials, which indicate, inter alia, that Raytheon radar equipment utilized and was originally supplied (in the 1940s) with asbestos-containing gaskets.

  (Pl. Exs. D through J, Doc. Nos. 265, 265-1, 265-2, and 265-3.)

6

## C. Analysis

Plaintiff alleges that he was exposed to asbestos from Raytheon radar equipment and gaskets used in that equipment. The Court examines the evidence pertaining to each source of alleged exposure separately:

(i) <u>Radar Equipment</u>

There is evidence that Plaintiff was exposed to respirable dust from Raytheon radarscopes (and, because he testified that it was dust from a "sealed" area within the radar equipement, that it was not dust from elsewhere that had settled there). There is evidence that this dust contained asbestos. There is evidence that this occurred several times per month (perhaps as many as ten times per month) during a period of over three years. As such, a reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from a product manufactured and/or supplied by Raytheon such that it was a substantial factor in the development of his illness. <u>See</u> <u>Lindstrom</u>, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is not warranted with respect to this source of alleged asbestos exposure. <u>Anderson</u>, 477 U.S. at 248-50.

(ii) <u>Gaskets</u>

There is evidence that Plaintiff worked with Raytheon gaskets. There is evidence that he (and other workers) removed and replaced gaskets used with Raytheon radar equipment. There is evidence that, when the Raytheon equipment was supplied for the ships at issue (in the 1940s), it was supplied with asbestos-containing gaskets. Importantly, however, there is no evidence that Plaintiff was exposed to respirable dust from any gasket that was both asbestos-containing and manufactured or supplied by Defendant Raytheon. In addition, there is not evidence that any such exposure that may have occurred would have been more than a "minimal exposure." As such, when applying maritime law, no reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from gaskets manufactured and/or supplied by Defendant Raytheon such that it was a substantial factor in the development of his illness because any such finding would be impermissibly speculative. <u>See</u> <u>Lindstrom</u>, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is warranted with respect to this source of alleged asbestos exposure. <u>Anderson</u>, 477 U.S. at 248-50.

7

E.D. Pa. No. 2:14-01954-ER    **AND IT IS SO ORDERED.**

_____
EDUARDO C. ROBRENO, J.

D.  **Conclusion**

Summary judgment in favor of Defendant on grounds of insufficient evidence of exposure/causation is <u>granted</u> with respect to alleged exposure from <u>gaskets</u>, but is <u>denied</u> with respect to alleged exposure from Raytheon <u>radar equipment</u>.