IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CALVIN DAMON and
ROSEANN DAMON,

    Plaintiffs,

v.

AIREON MANUFACTURING CORP.,
ET AL.,

    Defendants.

CONSOLIDATED UNDER
MDL 875

FILED SEP 02 2015
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

E.D. PA CIVIL ACTION NO.
2:14-01954-ER

**O R D E R**

**AND NOW,** this **2nd** day of **September, 2015**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant

Honeywell International, Inc. (Doc. No. 243) is **GRANTED in part;**

**DENIED in part.**[1]

---

[1]     This case was removed in April of 2014 from the Court of Common Pleas of Philadelphia to the United States District Court for the Eastern District of Pennsylvania, where it became part of MDL-875.

    Plaintiff Calvin Damon ("Mr. Damon") alleges that he developed lung cancer as a result of exposure to asbestos while serving in the Navy. Plaintiffs allege that Defendant Honeywell International, Inc. ("Honeywell") (the successor-in-interest to Allied Signal, Inc., which was the successor-in-interest to the Bendix Corporation) is liable for asbestos exposure arising from radar equipment Bendix manufactured (and insulation used therewith), which were used aboard ships. The alleged exposure pertinent to Defendant Honeywell occurred during Mr. Damon's work aboard:

-   <u>USS Lake Champlain</u> (CVS-39) - June 1966-July 1967

    Plaintiffs brought claims against various defendants. Defendant Honeywell has moved for summary judgment, arguing that there is insufficient evidence to establish causation with respect to any product for which it could be liable. The parties agree that Pennsylvania law applies.

## I. Legal Standard

### A. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B. The Applicable Law

The parties agree that Pennsylvania law applies. However, where a case sounds in admiralty, application of a state's law (including a choice of law analysis under its choice of law rules) would be inappropriate. Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131-32 (3d Cir. 2002). Therefore, if the Court determines that maritime law is applicable, the analysis ends there and the Court is to apply maritime law. See id.

Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various

2

Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

### Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a vessel on navigable waters, then the locality test is not met and state law applies.

### Connection Test

When a worker whose claims meet the locality test was primarily sea-based during the asbestos exposure, those claims will almost always meet the connection test necessary for the application of maritime law. Conner, 799 F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at 534). This is particularly true in cases in which the exposure has arisen as a result of work aboard Navy vessels, either by Navy personnel or shipyard workers. See id. But if the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection test and state law (rather than maritime law) applies. Id.

It is undisputed that Plaintiff's alleged exposure to asbestos from Defendant's product(s) occurred while aboard a ship. Therefore, this exposure was during sea-based work. See Conner, 799 F. Supp. 2d 455. Accordingly, maritime law is applicable to Plaintiffs' claims against Defendant. See id. at 462-63.

### C. Bare Metal Defense Under Maritime Law

This Court has held that the so-called "bare metal defense" is recognized by maritime law, such that a manufacturer has no liability for harms caused by – and no duty to warn about hazards associated with – a product it did not manufacture or distribute. Conner v. Alfa Laval, Inc., No. 09-67099, – F. Supp. 2d –, 2012 WL 288364, at *7 (E.D. Pa. Feb. 1, 2012)(Robreno, J.).

### D. Product Identification/Causation Under Maritime Law

In order to establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 375 (6th Cir. 2001). This Court has also noted that, in light of its holding in Conner v. Alfa Laval, Inc., No. 09-67099, – F. Supp. 2d –, 2012 WL 288364 (E.D. Pa. Feb. 1, 2012)(Robreno, J.), there is also a requirement (implicit in the test set forth in Lindstrom and Stark) that a plaintiff show that

4

(3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. Abbay v. Armstrong Int'l., Inc., No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. Stark, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. Id. at 376 (quoting Harbour v. Armstrong World Indus., Inc., No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. Lindstrom, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Id. Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" Id. (quoting Harbour, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." Stark, 21 F. App'x at 376 (citing Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

## II. Defendant Honeywell's Motion for Summary Judgment

### A. Defendant's Arguments

Honeywell argues that Plaintiff's evidence is insufficient to establish causation with respect to any alleged asbestos exposure from any equipment for which it could potentially be liable. Honeywell contends that this because (1) the evidence is insufficient to establish that any exposure was a "substantial factor" in the development of the illness, and (2) Plaintiff has failed to provide the expert causation evidence that Defendant contends is required by Pennsylvania law.

5

## B. Plaintiff's Arguments

In support of his assertion that he has identified sufficient evidence of exposure/causation to survive summary judgment, Plaintiff cites to the following evidence:

- <u>Deposition of Plaintiff (Calvin Damon)</u>
  Plaintiff provides testimony that he was exposed to respirable dust from Bendix radar equipment while he was working as a radarman aboard the <u>USS Lake Champlain</u> during the mid 1960s. He testified that this occurred approximately once per month, while brushing down the equipment and opening it to service it, and that he himself personally performed the work leading to the exposure four or five times, while other times he was standing nearby while another worker did the work.

  Plaintiff testified that dust exposure occurred each time the equipment was worked on – and that the dust would make it hard to breathe and would make him cough.

  Plaintiff testified that he associated the name Bendix with the radar equipment units used in the "ECM" room. He stated that he saw the name on a tag on the unit, which he believed was on the side, inside the unit. He testified that there was at least one Bendix unit (and possibly up to four, although he could not identify an exact number).

  When questioned multiple times as to whether he saw the dust emanating from the Bendix equipment (as opposed to coming from some other material or equipment nearby), he answered that it did emanate from the Bendix equipment itself. He testified multiple times that this dust contained asbestos.

  (Pl. Exs. A, B, and C, Doc. No. 266.)

- <u>Military Documents</u>
  Plaintiff cites to two documents (apparently erroneously identified as Exhibit H, but

6

seemingly Exhibit K), which consist of a
military ship equipment inspection report for
the <u>USS Lake Champlain</u> and a military
instruction manual for the pertinent Bendix
radar equipment, which indicate that Bendix
radar equipment was used aboard the <u>USS Lake
Champlain</u>.

(Pl. Ex. K, Doc. No. 266-1.)

- <u>Various Other Documents</u>
  Plaintiff cites to various other pieces of
  evidence, including military specifications,
  expert testimony, and marketing materials,
  which indicate, <u>inter alia</u>, that the military
  required (1) asbestos in molded plastic parts
  for Phenolic equipment, and (2) that
  asbestos insulation be used with radar
  equipment (such as the Bendix radar
  equipment).

  (Pl. Exs. D through P, Doc. Nos. 266, 266-1,
  266-2, 266-3, and 266-4.)

**C. Analysis**

Plaintiff alleges that he was exposed to asbestos from
Bendix radar equipment and insulation used with that equipment.
The Court examines the evidence pertaining to each source of
alleged exposure separately:

(i) <u>Radar Equipment</u>

There is evidence that Plaintiff was exposed to
respirable dust from Bendix radar equipment. There is evidence
that this dust contained asbestos. There is evidence that this
occurred on numerous occasions (occurring approximately once per
month during a period of over a year (June 1966 to July 1967))
and that the exposure was especially proximate on four or five
occasions during which he personally performed the work. As such,
a reasonable jury could conclude from the evidence that Plaintiff
was exposed to asbestos from a product manufactured and/or
supplied by Bendix such that it was a substantial factor in the
development of his illness. <u>See</u> <u>Lindstrom</u>, 424 F.3d at 492. To
the extent that Defendant suggests that the asbestos dust could

_____
**EDUARDO C. ROBRENO, J.**

---

have emanated from a source other than its equipment (and merely landed on or inside its equipment), the argument is one properly made to the jury and merely underscores the existence of a genuine dispute of material fact regarding causation. See Anderson, 477 U.S. at 248-50. Accordingly, summary judgment in favor of Defendant is not warranted with respect to this source of alleged asbestos exposure. Id.

Because the Court has determined that maritime law (and not Pennsylvania law) is applicable to Plaintiff's claims against Defendant, it need not address Defendant's argument regarding a purported requirement under Pennsylvania law for expert testimony regarding causation.

(ii) Insulation

There is evidence that asbestos insulation was likely used with Bendix radar equipment aboard the USS Lake Champlain. However, there is no evidence that Plaintiff was exposed to respirable dust from any such insulation, or that any such insulation was manufactured or supplied by Defendant (or one of its predecessors). As such, no reasonable jury could conclude from the evidence that Plaintiff was exposed to asbestos from insulation manufactured and/or supplied by Defendant (or one of its predecessors) such that it was a substantial factor in the development of his illness because any such finding would be impermissibly speculative. See Lindstrom, 424 F.3d at 492. Accordingly, summary judgment in favor of Defendant is warranted with respect to this source of alleged asbestos exposure. Anderson, 477 U.S. at 248-50.

**D. Conclusion**

Summary judgment in favor of Defendant on grounds of insufficient evidence of exposure/causation is granted with respect to alleged exposure from insulation, but is denied with respect to alleged exposure from Bendix radar equipment.